Filed 12/4/20  P. v. Culpepper CA4/2
(unmodified opinion attached)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072675 |
| v. | (Super.Ct.No. RIF084270) |
| NORMAN FREDRICK CULPEPPER, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | |
| | [NO CHANGE IN JUDGMENT] |

The petition for rehearing is denied.  The opinion filed in this matter on November 9, 2020, is modified as follows:

Page 27, line 18, delete "the killing of," and replace it with "the torturing of."

On page 28, line 6, delete the comma after the word "kidnapping" and add the word "and" after the word "kidnapping."

On page 28, line 7, delete the comma after the word "chair," and delete the words "and was purportedly present for the shooting."

1

Except for these modifications, the opinion remains unchanged.  The modifications do not affect a change in the judgment

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

RAMIREZ _____

P. J.

RAPHAEL _____

J.

2

Filed 11/9/20  P. v. Culpepper CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072675 |
| v. | (Super.Ct.No. RIF084270) |
| NORMAN FREDRICK CULPEPPER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Cindy G. Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (Senate Bill 1437), legislation that prospectively amended the mens rea requirements for the offense of murder and restricted the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, § 4.) Senate Bill 1437 also established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts. (*Ibid*.; see Pen. Code,[1] § 1170.95)

Defendant and appellant Norman Fredrick Culpepper appeals from an order denying his petition to vacate his first degree murder conviction in which he aided and abetted one or more codefendants and obtain resentencing under the procedures established by Senate Bill 1437. Defendant argues the trial court erred in summarily denying his petition because he had established a prima facie showing he was entitled to relief. He thus asserts the court should have issued an order to show cause and hold a hearing on the merits. He also contends the jury's true finding on the felony-murder special circumstance allegation does not preclude him from relief under section 1170.95.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

We reject these contentions and affirm the postjudgment order denying defendant's section 1170.95 petition.

II

FACTUAL AND PROCEDURAL BACKGROUND[2]

During the morning of June 8, 1997, Lester Wilson, known as Woody, and Barbara Phillips, known as Bobbi, confronted Mike Durbin at his apartment in Riverside. When Mike answered a knock on his front door, Woody thrust a handgun in Mike's face and backed him into Mike's apartment. Woody demanded to know where Mike's brother, Uwe Durbin, was. Woody and Bobbi wanted their two TV's and a VCR returned. Woody and Bobbi believed Uwe, who had previously stayed with them, had stolen their property. Mike told them he did not know where Uwe was.

Woody demanded that Mike, Mike's girlfriend, Lisa Robson, and her three children leave with him and Bobbi. Mike went in his car with Woody. Lisa and her children went with Bobbi. As they were leaving Mike's apartment, Uwe arrived. Woody forced him at gunpoint into Mike's car. Uwe denied knowing anything about Woody's missing property.

Mike drove to Woody's house, and Lisa followed. The group entered Woody's home. While Lisa, Bobbi, and the children were upstairs, Woody again asked Uwe where his property was, and Uwe denied knowing anything about it. Woody shot Uwe in

---

[2] The factual background is taken from this court's nonpublished opinion in defendant's prior appeal, case No. E030436. (*People v. Culpepper* (June 7, 2002, E030436) [nonpub. opn.] (*Culpepper I*).)

3

the knee.  After Woody punched Uwe with a welder-type glove, and kicked and choked him, Uwe told Woody he sold the TV's and VCR.  Woody and Mike then went to look for the property, returning without finding it.

Woody left again alone and returned with defendant, Michael Woods, known as K-Mac, and Charone Parker, known as Ron-Ron.  Upon returning, Woody announced they were going to kill all their captives.  Throughout the afternoon, Woody, defendant, K-Mac, and Ron-Ron entered the room where Uwe was, closed the door, and beat him.  On one occasion, after defendant entered the room alone, Mike heard flesh pounding flesh, glass breaking, thumping on the walls, and Uwe moaning and crying out.  According to Mike, after 30 or 45 minutes, defendant left the room sweating, smiling, and wiping blood off himself with a towel.

Later on, Woody moved Mike to Uwe's room, and Woody or defendant bound Mike to a chair with duct tape.  Uwe was also bound in duct tape, laying on the floor on plastic, covered with blood, swollen, and unable to speak clearly.  The room was in a shambles, with blood everywhere, holes in the walls, and hair stuck to the walls around the holes.  Mike saw Woody beat Uwe and attempt to choke him.

Eventually that afternoon, Woody recovered one of his TV's and his VCR.  Woody then unbound and removed Mike from the room.  Uwe asked for something to drink.  K-Mac and Woody went to the bathroom, returned with a glass of urine, and demanded Uwe drink it.  When he refused, defendant beat Uwe.  They brought Uwe

4

another glass of urine and beat him until he drank it.  Mike heard defendant and K-Mac laughing about the incident.

K-Mac and Ron-Ron left at dusk.  Woody put bloody items in a box and put the box in his car trunk.  Uwe was placed in Woody's car.  Woody told Mike to leave in his car with Lisa and the children and not go to the police.

On June 9, 1997, at 9:00 a.m., Riverside City firefighters responded to a call for medical aid at the 91 freeway, at Tyler.  Upon arriving at the location, Firefighter Patricia Mullen discovered Uwe's dead body laying face-down in water in a ravine.

The autopsy showed that Uwe died of multiple gunshot wounds and blunt force trauma.  He suffered five gunshot wounds to his head, gunshot wounds to his hand and knee, and blunt force trauma injuries to his head, face, torso, shoulders, and extremities His injuries included a fractured nose and jaw, split lips, a missing tooth, two fractured ribs, strangulation markings, and a large laceration on the top of his head, consistent with having been hit with a bottle.  According to forensic pathologist testimony, Uwe[3] was alive during his gunshot wounds, with the last shot to his brain likely being fatal.

Detectives found bloody objects in Woody's car.  The blood matched Uwe's.  A plastic bag containing bloody latex gloves bearing defendant's palm print was also found in the car.

After defendant was arrested, he told Officer Sanfilippo that on June 8, 1997, Woody told him he had tied up and shot in the knee someone who had broken into his

---

[3] The prior nonpublished opinion incorrectly states "defendant."  (*Culpepper I*, *supra*, E030436 at p. 5.)

5

home. Woody said he needed baby-sitters to watch the children at his home. Defendant went to Woody's house with Woody, K-Mac, Ron-Ron, and Nicole Thompson to calm the situation and help out. When he arrived at Woody's, Uwe was duct-taped to a chair, with a gunshot wound to the knee. Defendant and his companions brought Bibles and prayed. They tried to persuade Woody not to hurt anyone if the property was returned. Defendant persuaded Woody to allow someone to take Lisa and her children out of the house. At some point during the afternoon, defendant took them to the park. Defendant also claimed he left the house with Woody to recover the property and, when he returned, Uwe was bloody and laying on plastic on the floor. Defendant claimed the beatings occurred when he was out of the house and he denied ever hitting Uwe.

On September 19, 2001, a jury convicted defendant of first degree murder (§ 187, subd. (a); count 1); kidnapping for extortion under circumstances where the victim suffered death or great bodily injury (§ 209, subd. (a); count 2); and torture (§ 206; count 3). The jury found true a special circumstance allegation that the murder was committed during the course of a kidnapping in count 1 (§ 190.2, subd. (a)(17)(B)). The jury also found true that the victim suffered bodily harm or death in the commission of count 2.

On October 4, 2001, defendant was sentenced to life without the possibility of parole on count 1 for murder and a consecutive term of life with the possibility of parole on count 3 for torture. The trial court stayed the sentence on count 2 for kidnapping pursuant to section 654.

6

On June 7, 2002, in a nonpublished opinion, we affirmed the conviction in its entirety. (*Culpepper I*, *supra*, E030436 at pp. 1-10.)

In 2018, after defendant's judgment of conviction became final, the Legislature enacted and the Governor signed Senate Bill 1437, effective January 1, 2019. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).)

On January 2, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill 1437, and asking to be resentenced.

On March 12, 2019, the People filed its response and opposition to order to show cause. In relevant part, the People argued assuming Senate Bill 1437 is constitutional, defendant was not entitled to relief because he was a major participant in the crime and acted with reckless disregard for human life.

At a hearing on April 19, 2019, a conflict-panel attorney appeared on behalf of defendant and requested "to file place holder." The prosecutor asked to be heard and stated as follows: "This was a special circumstance matter. Sentence was LWOPP.

7

There—in imaging, there is the appellate opinion, and also in imaging are the jury instructions including CALJIC 8.80.1 that required the jury to find major participant and reckless indifference." The trial court thereafter inquired whether there was a true finding, and the prosecutor responded, "Yes." After defense counsel noted an objection on behalf of defendant, the court summarily denied defendant's section 1170.95 petition.

On May 1, 2019, defendant filed a timely notice of appeal from the denial of his section 1170.95 petition.

III

DISCUSSION

Defendant contends the trial court erred in summarily denying his section 1170.95 petition for resentencing because he had established a prima facie showing he was entitled to relief.

A. *Standard of Review and Applicable Law*

We review de novo questions of statutory construction. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*Ibid.*)

On September 30, 2018, the Governor signed Senate Bill 1437. "The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by

8

amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722 (*Martinez*).)

An uncodified section of the law expressing the Legislature's findings and declarations states the law was "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It further provides that the legislation was needed "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (*Id.*, § 1, subd. (e).)

Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161; *In re R.G.* (2019) 35 Cal.App.5th 141, 144 (*R.G.*).) "This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed "'for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion." [Citations.]'

9

[Citation.]" (*R.G.*, at p. 144.) "The purpose of the felony-murder rule [was] to deter those who commit[ted] the enumerated felonies from killing by holding them strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony." (*People v. Cavitt* (2004) 33 Cal.4th 187, 197.) Aider and abettor liability under the doctrine was thus "vicarious in nature." (*People v. Chiu*, at p. 164.)

Senate Bill 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*R.G.*, *supra*, 35 Cal.App.5th at p. 144; accord, *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), review granted Mar. 18, 2020, S260493.[4]) "Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749; § 189, subd. (e); Stats. 2018, ch. 1015, § 3; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1099-1100, review granted Nov. 13, 2019, S258175; *Martinez*, *supra*, 31 Cal.App.5th at

---

[4] Under a recent amendment to California Rules of Court, rule 8.1115, we may rely on *Verdugo* as persuasive authority while review is pending. (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

10

p. 723; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), review granted

Mar. 18, 2020, S260598.[5]) "Senate Bill 1437 thus ensures that murder liability is not

imposed on a person who did not act with implied or express malice," or—when the

felony-murder doctrine is at issue—"was not the actual killer, did not act with the intent

to kill, or was not a major participant in the underlying felony who acted with reckless

indifference to human life." (*People v. Munoz*, at pp. 749-750; Stats. 2018, ch. 1015, § 1,

subds. (f), (g); *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147; *Martinez*, at

p. 723.)

As noted above, Senate Bill 1437 amended section 189 to limit liability for murder

under a felony-murder theory to a person who (1) was the actual killer; (2) though not the

actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded,

induced, solicited, requested, or assisted the actual killer" in the commission of first

degree murder; or (3) was "a major participant in the underlying felony and acted with

reckless indifference to human life, as described in subdivision (d) of Section 190.2."

(§ 189, subd. (e); *Verdugo*, *supra*, 44 Cal.App.5th at p. 326.)

Senate Bill 1437 did not "alter the law regarding the criminal liability of direct

aiders and abettors of murder because such persons necessarily 'know and share the

murderous intent of the actual perpetrator.'" (*Lewis*, *supra*, 43 Cal.App.5th at p. 1135.)

Accordingly, "[o]ne who directly aids and abets another who commits murder is thus

---

[5] As previously noted, under a recent amendment to California Rules of Court, rule 8.1115, we may rely on *Lewis* as persuasive authority while review is pending. (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

11

liable for murder under the new law just as he or she was liable under the old law."

(*Ibid.*)

Senate Bill 1437 also added section 1170.95. That section provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) A petition may be filed when the following three conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)-(3); see *Martinez*, *supra*, 31 Cal.App.5th at p. 723.)

The petitioner must declare that he or she is eligible for relief based on the requirements above, provide the case number and year of conviction, and specify whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1).) "If any of the information required by this subdivision is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the

12

filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c), sets forth the trial court's obligations upon the submission of a complete petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At such a hearing, both the prosecution and the defense may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3); *Martinez, supra*, 31 Cal.App.5th at pp. 723-724.)

If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been [*sic*] previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) If the petitioner

13

is found eligible for relief, but "murder was charged generically[ ] and the target offense was not charged," the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes."  (§ 1170.95, subd. (e).)

B.     *Eligibility Under Section 1170.95*

Defendant contends he had made a prima facie showing he was entitled to relief under section 1170.95, and thus the court should have issued an order to show cause and held a hearing on the merits.  He also asserts that the trial court may not look beyond the face of the petition at this stage of inquiry, and even if the court could, the court could not rely on this court's prior nonpublished opinion to establish the facts of the crime.

Recent appellate court decisions have rejected similar contentions that section 1170.95, subdivision (c), mandates briefing whenever a facially sufficient petition has been filed.  (See *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 323, 328, 332-333; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)  For example, the *Verdugo* court determined that subdivisions (b) and (c) of section 1170.95 together prescribe a "three-step evaluation" process before determining if an order to show cause should issue.  (See *Verdugo*, at pp. 330, 332-333.)  It explained that upon the filing of a section 1170.95 petition, the trial court first screens the petition to determine if it contains the basic averments required by subdivision (b)(1)(A) and (B).  (See *Verdugo*, at pp. 323, 327-328.)  The court may deny the petition at this stage without prejudice to refiling if the petition lacks required elements or is facially inadequate.  (§ 1170.95, subd. (b)(2);

14

*Verdugo*, at p. 328.)  "This initial review thus determines the facial sufficiency of the petition."  (*Verdugo*, at p. 328.)

The *Verdugo* court further explained, "Subdivision (c) then prescribes two additional court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief."  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.)  The initial prima facie review is "to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner."  (*Verdugo*, at p. 329.)  At this stage of review, the trial court may rely upon the petitioner's record of conviction, including the charging documents, jury instructions, verdict forms, and appellate decision, to conclusively establish ineligibility for relief.  (See § 1170.95, subd. (a)(1)-(2); *Verdugo*, at p. 333; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1138.)

"[I]f the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief."  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330; see § 1170.95, subd. (c).)  After the second review, if the trial court concludes that the petitioner has established a

15

prima facie basis of eligibility for resentencing, it must issue an order to show cause. (*Verdugo*, at p. 328; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140.)[6]

Here, it is undisputed that a jury convicted defendant of first degree murder (§ 187, subd. (a)) while defendant was engaged in the commission of the crime of kidnapping (§ 190.2, subd. (a)(17)(B)), and this court affirmed the judgment of conviction in its entirety. (*Culpepper I*, *supra*, E030436, at pp. 1-10; see *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419 (*Gutierrez-Salazar*.) The record of conviction shows that defendant was a major participant, and acted with reckless disregard for human life, in the commission of the murder. Thus, for the reasons explained below, defendant would not be able to refute he was convicted on a valid theory of murder which survives the changes to sections 188 and 189.

C. *Review of Record of Conviction*

Defendant argues the trial court could not review his record of conviction, namely our prior decision in his appeal, to establish the facts of the crime and determine the jury's true finding on the special circumstance to render him ineligible for relief. According to defendant, two California Supreme Court cases decided after he was convicted—*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—clarified what "major participant" and "reckless indifference" to

---

[6] On March 18, 2020, the California Supreme Court granted review on the following questions that directly bear on defendant's appeal: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)." (*People v. Lewis* (Mar. 18, 2020, S260598) [2020 Cal.Lexis 1946].)

16

human life mean for purposes of section 190.2, subdivision (d), and therefore require us to conclude his special circumstance finding was not supported by sufficient evidence. As we explain, it is proper for a trial court to review the record of conviction when determining whether a section 1170.95 petitioner has stated a prima facie claim for relief. Additionally, even under the principles articulated in *Banks* and *Clark* after defendant was convicted, he undoubtedly qualifies as a major participant who acted with reckless indifference to human life, a conclusion that renders him ineligible for relief under section 1170.95.

Two opinions, *Lewis* and *Verdugo*, have already rejected the argument that a trial court is limited to the allegations in the petition when determining whether the petitioner has stated a prima facie claim for relief under section 1170.95.

In *Lewis*, the defendant argued "that the court could look no further than his petition in evaluating his prima facie showing and the court therefore erred when it considered [the] opinion in his direct appeal." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1137.) In *Verdugo*, the defendant argued "the superior court lacked jurisdiction to deny his section 1170.95 petition on the merits" based on its review of the record of conviction "without first appointing counsel and allowing the prosecutor and appointed counsel to brief the issue of his entitlement to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323.) Analogizing to the well-established and similar resentencing procedures under Propositions 36 and 47, the *Lewis* and *Verdugo* courts rejected these arguments, concluding a trial court may consider the record of the petitioner's conviction, including

17

documents in the court's own file and the appellate opinion resolving the defendant's direct appeal.  (*Lewis*, at pp. 1137-1138; *Verdugo*, at pp. 329-330.)

The *Lewis* court reasoned:  "Allowing the trial court to consider its file and the record of conviction is also sound policy.  As a respected commentator has explained:  'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief.  For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' (Couzens et al., Sentencing Cal. Crimes [(The Rutter Group 2019)] ¶ 23:51(H)(1), pp. 23-150 to 23-151.)"  (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138.)

Moreover, recently this court in *People v. Law* (2020) 48 Cal.App.5th 811 (*Law*) review granted July 8, 2020, S262490, relying on *Lewis* and *Verdugo*, concluded that when determining whether a petitioner has stated a prima facie claim for relief under section 1170.95, the trial court is not limited to the allegations in the petition.  Rather, the court may consider the entire record of conviction and subsequent appellate opinion. (*Law*, at pp. 820-821 [trial court did not err by looking to the record of conviction, the

18

opinion in the defendant's direct appeal, and the jury instructions from his trial in evaluating his petition].)  We therefore conclude the court did not err by considering the record of conviction in evaluating defendant's petition.

        D.      *Jury's Special Circumstance Finding*

Next, defendant argues the trial court could not look at the jury's special circumstance finding to support the conclusion he was a major participant or acted with reckless indifference to human life under *Banks* and *Clark*.  He argues that because *Banks* and *Clark* were issued after his conviction became final, no court has analyzed the sufficiency of the evidence supporting his section 190.2, subdivision (d) special circumstance finding under the correct standard.  The People assert the evidence amply supports the special circumstance finding under the principles articulated in *Banks* and *Clark*.  We agree with the People.

Section 190.2 sets forth the special circumstances under which murderers and accomplices can be punished by death or life without possibility of parole.  Two such circumstances are when a defendant is found guilty of first degree murder committed while the defendant was engaged in, or was an accomplice in, the commission or attempted commission of a kidnapping (§ 190.2, subd. (a)(17)(B)).  However, as explained above, a death resulting during the commission of a kidnapping (or any other felony enumerated in section 189) is insufficient, on its own, to establish a felony-murder special circumstance for those defendants, like defendant here, who were not found to be the actual killer.  Such defendants can only be guilty of special circumstance felony-

19

murder if they aid in the murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aid in the felony "with reckless indifference to human life and as a major participant." (§ 190.2, subd. (d)).

Section 190.2, subdivision (d), was enacted in 1990 to bring state law into conformity with prevailing Eighth Amendment doctrine, as set out in the United States Supreme Court's decision *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*). (*Banks*, *supra*, 61 Cal.4th at p. 798.) "In *Tison*, two brothers aided an escape by bringing guns into a prison and arming two murderers, one of whom they knew had killed in the course of a previous escape attempt. After the breakout, one of the brothers flagged down a passing car, and both fully participated in kidnapping and robbing the vehicle's occupants. Both then stood by and watched as those people were killed. The brothers made no attempt to assist the victims before, during, or after the shooting, but instead chose to assist the killers in their continuing criminal endeavors. [Citation.] The Supreme Court held the brothers could be sentenced to death despite the fact they had not actually committed the killings themselves or intended to kill, stating: '[R]eckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result. [¶] The [brothers'] own personal involvement in the crimes was not minor, but rather, . . . "substantial." Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery,

20

each . . . was actively involved in every element of the kidnap[p]ing-robbery and was physically present during the entire sequence of criminal activity culminating in the murder[s] . . . and the subsequent flight. The Tisons' high level of participation in these crimes . . . implicates them in the resulting deaths.'" (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393-394 (*Ramirez*), quoting *Tison*, at pp. 157-158.)

"The *Tison* court pointed to the defendant in *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*) as an example of a nonkiller convicted of murder under the felony-murder rule for whom the death penalty was unconstitutionally disproportionate. Enmund was the driver of the getaway car in an armed robbery of a dwelling whose occupants were killed by Enmund's accomplices when they resisted. [Citations.] In deciding the Eighth Amendment to the United States Constitution forbids imposition of the death penalty 'on one such as Enmund' . . . , the high court emphasized that the focus had to be on the culpability of Enmund himself, and not on those who committed the robbery and shot the victims [citation]. 'Enmund himself did not kill or attempt to kill; and, . . . the record . . . does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . . [T]hus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the [victims]. This was impermissible under the Eighth Amendment.'" (*Ramirez*, *supra*, 32 Cal.App.5th at p. 394.)

In *Banks*, the California Supreme Court described what is often referred to as the *Tison-Enmund* spectrum. "At one extreme" are people like Enmund—"the minor actor in

21

an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state." (*Banks*, *supra*, 61 Cal.4th at p. 800.) "At the other extreme [are] actual killers and those who attempted or intended to kill." (*Ibid.*) Section 190.2, subdivision (d), covers those people who fall "'into neither of these neat categories'"—people like the Tison brothers, who were major participants in the underlying felony and acted with a reckless indifference to human life. (*Banks*, at p. 800.)

Our high court articulated several factors intended to aid in determining whether a defendant falls into this middle category, such that section 190.2, subdivision (d), would apply to them. "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or *using* lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant *present at the scene* of the killing, in a position to facilitate or *prevent* the actual murder, and did his or her own actions or *inaction* play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, italics added.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

The defendant in *Banks* was convicted of first degree murder with a felony-murder special circumstance based on his having acted as the getaway driver for an armed robbery in which his codefendant Banks and others participated, and in which Banks shot

and killed one of the robbery victims while escaping. (*Banks*, *supra*, 61 Cal.4th at pp. 796-797.) Considering the defendant's involvement in the robbery against the factors just enumerated, the Court "placed [him] at the *Enmund* pole of the *Tison-Enmund* spectrum." (*Ramirez*, *supra*, 32 Cal.App.5th at p. 397.) The court found particularly significant the fact the defendant played the role of getaway driver and was not aware his codefendants planned to use guns during the robbery. Because he "did not see the shooting happen, did not have reason to know it was going to happen, and could not do anything to stop the shooting or render assistance," the court concluded he was not "willingly involved in the violent manner in which the particular offense [was] committed." (*Banks*, at pp. 801, 803, fn. 5, 807.) As a result, the court concluded "the jury's special-circumstance true finding cannot stand." (*Id*. at p. 811.)

Not long after *Banks*, our Supreme Court revisited this issue in *Clark*, also concluding the evidence was insufficient to support the defendant's robbery-murder special circumstance findings. (*Clark*, *supra*, 63 Cal.4th at p. 611.) The defendant in *Clark* planned a burglary of a computer store to occur after the store was closed. According to the plan, his codefendant was to carry out the burglary armed with an unloaded gun. However, his codefendant ended up carrying a gun loaded with one bullet and fired that bullet when he unexpectedly encountered a store employee, killing her. (*Id*. at pp. 612-613.) Our high court concluded there was insufficient evidence Clark acted with reckless indifference to human life because (a) Clark was not physically present when his codefendant killed the employee and was therefore unable to intervene;

23

(b) there was no evidence Clark knew his codefendant was predisposed to be violent; and (c) Clark planned for the robbery to take place after the store closed, and the gun was not supposed to be loaded. (*Id*. at pp. 619-622.) In sum, the court believed there was "nothing in [Clark's] plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id*. at p. 623.)

Defendant argues, and we agree, that in determining if he could be convicted today of first degree murder, the trial court cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that he was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time. Rather, the court must determine if substantial evidence supports the jury's finding as that standard was interpreted by our high court in *Banks* and *Clark*.

Nonetheless, we believe an appellate court is capable of determining whether a defendant's pre-*Banks* and *Clark* trial record is sufficient to support the special circumstances finding under the guidance articulated in those cases. As the court stated in *In re Miller* (2017) 14 Cal.App.5th 960 (*Miller*), "[a] [d]efendant's claim that the evidence presented against him failed to support [a] robbery-murder special circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence." (*Id*. at pp. 979-980.) The "claim does not require resolution of disputed facts; the facts are a given." (*Id*. at p. 980.) As the *People v. Torres* (2020) 46 Cal.App.5th 1168 court observed, review granted June 24, 2020, S262011, "[t]he question is whether

24

[those given facts] are *legally sufficient* in light of *Banks* and *Clark*." (*Id*. at p. 1179, italics added.)

More recently, in *Law*, *supra*, 48 Cal.App.5th 811, this court held that, because the defendant was convicted before *Banks* and *Clark*, he was "entitled to a determination of whether the trial evidence [was] sufficient to support the section 190.2 special circumstances finding under the principles articulated in those cases." (*Id*. at p. 821.) We further concluded that whether there was sufficient evidence that a defendant was a major participant in a robbery who acted with reckless indifference to human life was a question we could decide on appeal. (*Id*. at p. 822.)[7] Thus, we considered the facts from the nonpublished opinion we issued in 2008. We decided that "[a]lthough the trial court erred by concluding the special circumstance finding, on its own, rendered Law ineligible for relief—that is, the court erred by failing to determine whether Law qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*—we conclude the error was harmless because the record demonstrates the answer to that question is yes." (*Id*. at p. 825.)

At oral argument, defense counsel disagreed with our conclusion in *Law* and argued a prior opinion should not be used to determine whether there was sufficient evidence under the new law to deny the petition for resentencing. We rejected this

---

[7] We acknowledge the court in *People v. Smith* (2020) 49 Cal.App.5th 85, 95, review granted, July 22, 2020, S262835, concluded that it could not conduct its own assessment of the trial evidence to determine whether the defendant was a major participant and acted with reckless indifference to human life, thereby disagreeing with our reasoning in *Law*, *supra*, 48 Cal.App.5th at p. 822. However, we choose to follow our own precedent.

contention in *Law*, and concluded "the court did not err by looking to the record of conviction and reviewing the attachments to the People's opposition (i.e., our opinion in Law's direct appeal or the jury instructions from his trial) in evaluating his petition."[8] (*Law*, *supra*, 48 Cal.App.5th at p. 821.)  We noted "[t]he 'claim does not require resolution of disputed facts; the facts are a given.'"  (*Id*. at p. 822.)  We adhere to our reasonings and conclusions in *Law*.

Hence, rather than remand for the trial court to make the determination of whether the trial record is sufficient to support the special circumstance finding under the guidance articulated in *Banks* and *Clark*, we will do so now.  In our view, the most significant facts in *Banks* and *Clark* were that the defendants in those cases were not present at the scene of the robberies (and therefore could not intervene or try to minimize the violence), did not know guns would be used, and certainly did not use any guns themselves in fulfilling their roles in the crime.  Those facts supported the inference that the defendants were not willingly involved in the violent manner in which the robberies were committed.

Defendant, in contrast, was willingly involved in the violent manner of the kidnapping.  Defendant was present in the apartment on the day of the murder, and a reasonable inference can be made that defendant heard Woody when Woody announced

---

[8]  During oral argument, we questioned the parties about whether a court could examine the record of conviction from a codefendant's case, i.e., the opinion in codefendant Wilson's direct appeal.  Neither party had a clear response, and we have found no cases concerning this question.  However, ostensibly under Evidence Code section 452, a court can take judicial notice of a codefendant's record of conviction.

that "they were going to kill all of their captives." (*Culpepper I*, *supra*, E030436 at pp. 3-4.) Throughout the afternoon, Woody, defendant, K-Mac, and Ron-Ron entered the room where Uwe was, closed the door, and beat him. At one point, while defendant was in the bedroom alone with Uwe, one of the other captives, Mike, heard the sound of "flesh pounding flesh, glass breaking, thumping on the walls, and Uwe moaning and crying out" from inside. (*Ibid.*) About 30 to 45 minutes later, defendant emerged from the room "sweating, smiling, and wiping blood off himself with a towel." (*Ibid.*)

Uwe was bound in duct tape, laying on the floor on plastic, covered with blood, swollen, and unable to speak clearly. The room was "in a shambles, with blood everywhere, holes in the walls, and hair stuck to the walls around the holes." (*Culpepper I*, *supra*, E030436 at p. 4.) Later on, when Uwe asked for something to drink, K-Mac and Woody gave him a glass of urine, and demanded Uwe drink it. When Uwe refused to drink the urine, defendant beat Uwe until he drank the urine. Afterwards, defendant and K-Mac laughed about the incident. (*Ibid.*) Inside the vehicle where Uwe's badly beaten body had been placed, detectives found a plastic bag containing bloody latex gloves bearing defendant's palm print. (*Id.* at p. 5.)

There was sufficient evidence in the record to conclude defendant was a major participant in the kidnapping of the victim and participated in the killing of the victim. There was also sufficient evidence to find defendant intended to kill the victim, and aided, abetted, counseled, commanded, induced, or assisted Woody and the others in the commission of the murder. Defendant could have tried to stop Woody and his other

27

codefendants' violent behaviors or help the victim once he had been kidnapped and shot, but he did neither.

Defendant's conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life. Indeed, we are not aware of a single case that suggests a defendant who was a major participant in a kidnapping, repeatedly beat the victim for at least 45 minutes while the victim was tied in a chair, and was purportedly present for the shooting did not meet the standard in section 190.2, subdivision (d). The defendants who have been successful in petitioning for a writ of habeas corpus to have their special circumstance findings vacated under *Banks* and *Clark* are those who were not wielding guns or weapons themselves or participating in beatings and were not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only). (See, e.g., *Miller*, *supra*, 14 Cal.App.5th at p. 965 [defendant played the role of "spotter" who would select the robbery target and was not at the scene of the robbery/murder]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1019-1020 [defendant was involved in planning the robbery but was not at the scene of the murder]; *Ramirez*, *supra*, 32 Cal.App.5th at p. 404 [defendant acted as getaway driver and was not at the scene of the murder]; *In re Taylor* (2019) 34 Cal.App.5th 543, 559 [same].) Defendant's conduct is clearly distinguishable.

At oral argument, defense counsel asserted that the trial court should have held an evidentiary hearing to allow defendant to offer new or additional evidence pursuant to

28

subdivision (d)(3) of section 1170.95 to address the merits under *Banks* and *Clark*.

Relying on *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), review granted

October 14, 2020, S264284, and *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*),

review granted October 14, 2020, S264033, the Attorney General responded "the proper

remedy for challenging a special circumstance finding is by a petition for habeas corpus,

not a petition for resentencing under section 1170.95." (*Galvan*, at p. 1137; *Gomez*, at

p. 17; accord, *People v. Murillo* (2020) 54 Cal.App.5th 160, 167-168; *People v. Allison*

(2020) 55 Cal.App.5th 449, 459, fn. 9 (*Allison*); contrast *People v. York* (2020) 54

Cal.App.5th 250 [disagreed with analysis in *Galvan*].)

Our appellate courts have been split over whether such a pre-*Banks*/*Clark* special

circumstance finding renders a petitioner ineligible for relief under section 1170.95 as a

matter of law. (Compare *Gomez*, *supra*, 52 Cal.App.5th 1, *Galvan*, *supra*, 52

Cal.App.5th 1134 & *Allison*, *supra*, 55 Cal.App.5th at pp. 457-458 [concluding the

special circumstance finding renders a petitioner ineligible for relief as a matter of law],

with *Torres*, *supra*, 46 Cal.App.5th 1168, *Smith*, *supra*, 49 Cal.App.5th 85, and *York*,

*supra*, 54 Cal.App.5th 250 [reaching the opposite conclusion].) As we recently

concluded in *People v. Jones* (Oct. 23, 2020, E072961) __ Cal.App.5th __ [2020

Cal.App. Lexis 1003], "[w]e agree with the People and in doing so agree with the *Gomez*,

*Galvan*, and *Allison* line of decisions. As we [ ] explain[ed], *Banks* and *Clark* did not

change the law, and [defendant's] special circumstance finding renders him ineligible for

29

relief under section 1170.95 as a matter of law." (*Jones*, at p. __ [2020 Cal.App. Lexis 1003 at *5-6].)

Therefore, as we found in *Jones*, the proper procedure for defendant "to challenge his special circumstance finding is to file a habeas petition and demonstrate the finding is not supported by sufficient evidence under *Banks* and *Clark*. (See [*People v.* ]*Ramirez*[ (2019)] 41 Cal.App.5th [923,] 926-928, 933 [directing trial court to grant Ramirez's section 1170.95 petition because he had been successful in getting his special circumstance finding vacated on habeas review].) This postconviction procedure has been available to [defendant] since the issuance of *Banks* in 2015." (*Jones*, *supra*, __Cal.App.5th at p. __ [2020 Cal.App. Lexis 1003 at *10-11].) "We recognize the *Torres*/*Smith*/*York* line of cases have concluded that petitioners with pre-*Banks*/*Clark* findings are entitled to challenge those findings in an evidentiary hearing under section 1170.95." (*Jones*, at p. __ [2020 Cal.App. Lexis 1003 at *11].) For the reasons explained in *Jones*, "[w]e respectfully disagree with those decisions because, in our view, they rest on a misunderstanding of the effect of *Banks* and *Clark*, and they overlook the plain language of section 1170.95." (*Jones*, at p. __ [2020 Cal.App. Lexis 1003 at *11].)

We therefore conclude that while the trial court erred by failing to determine whether defendant qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*, the error was harmless because "the record demonstrates the answer to that question is yes." (*Law*, *supra*, 48 Cal.App.5th at p. 825.) Errors in the adjudication of retroactive statutory resentencing provisions are reviewed

30

for harmless error. (*Ibid.* [summary denial of section 1170.95 petition reviewed for harmless error]; *People v. Johnson* (2016) 1 Cal.App.5th 953, 968 [applying *People v. Watson* (1956) 46 Cal.2d 818 standard of reversal only where the defendant can establish prejudice from trial court's error].) As a result, we conclude the denial of defendant's petition was proper. (See *Law*, at p. 825; *Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at p. 419; *People v. Gonzalez* (2018) 5 Cal.5th 186, 202 ["The special circumstance instructions also required the jury to find that each aider and abettor either intended to kill or (1) began participating in the crime before or during the killing, (2) was a major participant in the crime, and (3) acted with reckless indifference to human life."]; see also CALJIC No. 8.80.1 [a defendant must have an intent to kill or be a major participant with a reckless disregard for human life to find him guilty when a special circumstance is charged and there is evidence that the defendant was not the killer].)

IV

DISPOSITION

The trial court's postjudgment order denying Culpepper's section 1170.95 resentencing petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

31